IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| ADRIAN BARAJAS | ) |
| ARIOANNA BARAJAS | ) Jury Trial Demanded |
| | ) |
| Plaintiffs | ) Case No. 1:23-cv-413-RAH-CWB |
| | ) |
| v. | ) Hon. R. Austin Huffaker Jr., District Judge |
| | ) Hon. Chad W. Bryan, Magistrate Judge |
| M1 SUPPORT SERVICES L.P. | ) |
| MARLIN BRANDON | ) |
| TERRY GALLAGHER | ) |
| THE BOEING COMPANY | ) |
| BOEING AEROSPACE OPERATIONS INC. | ) |
| DUCOMMUN INCORPORATED | ) |
| DUCOMMUN AEROSTRUCTURES INC. | ) |

No.1, whether singular or plural, the owner of the Apache helicopter involved in the crash made the basis of this lawsuit;

No.2, whether singular or plural, the lessor of the Apache helicopter involved in the crash made the basis of this lawsuit;

No.3, whether singular or plural, the lessee of the Apache helicopter involved in the crash made the basis of this lawsuit;

No.4, whether singular or plural, that entity which was in control of the Apache helicopter involved in the crash made the basis of this lawsuit;

No.5, whether singular or plural, that entity, whether by contract or conduct, undertook and/or had a responsibility to inspect, maintain, service or repair of the Apache helicopter involved in the crash made the basis of this lawsuit and/or its tail rotor assembly;

No.6, whether singular or plural, that Alabama citizen individual who inspected, maintained, serviced, or repaired the Apache helicopter involved in the crash made the basis of this lawsuit and/or its tail rotor assembly prior to the crash made the basis of this lawsuit and/or undertook to do the same;

No.7, whether singular or plural, that entity, prior to the crash made the basis of this lawsuit, entered into a contract or agreement to inspect, modify, service, maintain and/or repair the Apache helicopter involved in the crash made the basis of this lawsuit and/or its tail rotor assembly;

No.8, whether singular or plural, that entity which had the duty to inspect, maintain, service and repair the Apache helicopter involved in the crash made the basis of this lawsuit and/or its tail rotor assembly;

No.9, whether singular or plural, that entity or individual, other than those described above whose negligence, wantonness, or other wrongful conduct contributed to cause the occurrence made the basis of this lawsuit;

No.10, whether singular or plural, that entity or those entities that designed, manufactured, assembled, sold and/or distributed the Apache helicopter involved in this lawsuit;

No.11, whether singular or plural, that entity or those entities that designed, manufactured, assembled, sold and/or distributed the the tail rotor paddle or other defective component parts of the Apache helicopter involved in this lawsuit;

-1-

FIRST AMENDED COMPLAINT

Come now the plaintiffs, Adrian Barajas and Arioanna Barajas, who allege the following facts, assert the following causes of action, and seek the following damages against the defendants, M1 Support Services L.P., Marlin Brandon, Terry Gallagher, Boeing Company, Boeing Aerospace Operations Inc., Ducommun Incorporated, Ducommun Aerostructures Inc., and Fictitious Party Defendants No.1, No.2, No.3, No.4, No.5, No.6, No.7, No.8, No.9, No.10, and No.11, as follows:

PARTIES, JURISDICTION, AND VENUE

1.     The plaintiffs, Adrian Barajas and Arioanna Barajas, are a married couple. They were married at the time of the events made the basis of this lawsuit. Both are over the age of nineteen. They are residents and citizens of Headland in Houston County, Alabama, and they have mental capacity to handle their affairs and pursue the claims stated herein.

2.     The defendant, M1 Support Services L.P. ("M1"), is a Texas Limited Partnership with its principal place of business headquartered in Denton, Texas. The citizenships of the partners of M1 are unknown to the Plaintiffs. M1 offers aviation logistics, information technology, training, supply chain management, acquisition and facilities and equipment maintenance services to the government sector. At all times material to this Complaint, M1 was registered to do business in Alabama, and it was doing business at Maxwell Air Force Base in Montgomery, Alabama and Fort Rucker, Alabama, which is now known as "Fort Novosel.".

3.     The defendant, Marlin Brandon, is a resident citizen of the State of Alabama, is over the age of 19 years, and is and was employed as the Deputy General Manager of Contract Operations at Fort Rucker/Novosel.

4.     The defendant, Terry Gallagher, is a resident citizen of the State of Alabama, is over the age of 19 years, and is and was employed as the Director of Maintenance at Fort Rucker/Novosel

and is responsible for all helicopter maintenance pursuant to the M1 Contract with the Army. Said individual defendant failed to identify and correct unsafe practices with the tail rotor blade inspection and failed to identify the lack of adherence to proper inspection procedures as detailed in the AH-64 Improved Electronic Technical Manual (IETM). The failure in supervision to detect the improper inspection resulted in allowing the flaw in the tail rotor blade to go undetected and unaddressed.

5. The defendants, The Boeing Company, and Boeing Aerospace Operations Inc. (hereinafter collectively referred to as "Boeing"), are foreign corporations that are registered to do business in Alabama. Boeing designed, manufactured, assembled, and sold a product known as the AH-64 Apache helicopter.

5.1. The defendants, Ducommun Incorporated and Ducommun Aerostructures Inc. (hereinafter collectively referred to as "Ducommun"), are foreign corporations that conduct significant business in Alabama. Upon information and belief, Ducommun designed, manufactured, assembled, and sold the tail rotor paddle, a component part that Boeing incorporated into its AH-64 Apache helicopter product.

6. The defendants described fictitiously in the caption as 1 through 11, whose descriptions in the style are incorporated by reference into the body of the complaint as if they were restated herein, are those individuals or entities whose legal names are unknown to Plaintiffs at this time, or if the names are known to Plaintiffs, their identities as proper defendants are not known to Plaintiffs, but whose true names will be substituted by amendment when such knowledge is ascertained.

7. The Defendants' wrongful acts occurred in the Middle District of Alabama. The Plaintiffs each seek more than $20,000.00 exclusive of interest and costs.

FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8.      On June 6, 2022, Plaintiff, Adrian Barajas, was employed by CAE as an AH-64E aka "Apache" helicopter instructor pilot in support of the U.S. Army advanced helicopter training contract. The Plaintiff retired from the U. S. Army at the rank of CW3 and was a qualified Apache pilot at all times. Following his retirement, he obtained employment as a civilian flight instructor with CAE, which provided helicopter training/flight instruction to Army and Air Force flight students at Fort Rucker, Alabama (now known as Fort Novosel). At the time of the incident, he had 3500 military rotary wing hours.

9.      On June 6, 2022, during a training flight with a student pilot, First Lieutenant S.Y., to conduct an introduction to terrain flight, the Apache AH-64E bearing tail number 1109010, experienced an abrupt rise in altitude and a change of heading. Shortly afterwards, the Apache entered into a spin. Plaintiff was unable to arrest the spin of the aircraft as it descended into a wooded area and crashed, resulting in serious injuries to the Plaintiff and the student pilot and a total loss of the Apache aircraft having a value of $30,007,800.00. Upon information and belief, the crash was caused by a system/component failure of the aircraft's tail rotor system. The crash site is depicted below:



10.     Following the crash, the United States Army Safety Center (Safety Center) and the United States Army Aviation Center of Excellence (Command) each conducted separate investigations of the Apache crash. Upon information and belief, each investigation found that Plaintiff did nothing wrong that caused or contributed to the Apache crash, there was no pilot error identified, and in fact Plaintiff was commended for landing the aircraft. Investigations identified the cause of the crash as a system/component failure of its tail rotor system.

11.     At all material times hereto, Defendant M1 and/or No.1, No.2, No.3, No.4, No.5, No.6, No.7, No.8, No.9, No.10, and No.11, were under contracts or obligations to inspect, maintain, repair, and inspect the Apache helicopter involved in this crash, including ensuring that its tail rotor assembly was routinely and thoroughly inspected. On December 15, 2016, the Department of the Army issued a request for proposals (RFP) seeking proposals to provide aircraft maintenance and logistical services to support flight training activities at Fort Rucker for a 1-year base performance period and 9, 1-year option periods. The Contract sought to ensure the availability of between 480-650 rotary wing aircraft to support flight training requirements for Army and Air Force aviators at Fort Rucker. The estimated value of the contract over the 10-year period is approximately $5 Billion. The contract was previously held by L-3 Army Sustainment, LLC (L3), and both L3 and M1 submitted proposals for the contract. On or about September 15, 2017, the contract was awarded to M1, and it was notified to begin full performance on or around April 1, 2018. Thereafter, Defendant M1 and/or the other identified defendants was awarded a $535,391,051.00, modification to its existing contract for aviation maintenance at Fort Rucker, Alabama, with an estimated completion date of Jan. 15, 2024. Subsequently, Defendant M1 and/or the other identified defendants won a potential 10-year, $387 million contract to support U.S. Army and Air Force rotary aviation training efforts at Fort Rucker in

Alabama. M1 would provide maintenance services under the hybrid contract work through Sept. 30, 2027.

11.1.    The AH-64 Apache has a four blade main rotor and a four blade tail rotor. The crew sits in tandem, with the pilot sitting behind and above the co-pilot/gunner. Both crewmembers are capable of flying the aircraft and performing methods of weapon engagements independently. Boeing designed and manufactured the AH-64 Apache helicopter and it's component parts, including the tail rotor blade system and tail rotor paddles that failed during the June 6, 2022 training flight. The primary cause of the June 6, 2022 crash made the basis of this suit was the failure of the Boeing tail rotor paddle/blade which failed during the flight and landed in a cotton field 751,000 feet from the crash site.

11.2.    Boeing is a global aerospace company. It designs, develops, manufactures, and services commercial aircraft and defense products for customers in more than 150 countries. It develops manufactures sales services and supports commercial jet liners, military aircraft, helicopters, satellites, and other aerospace products and services worldwide. The Boeing military aircraft segment researches, develops, produces, and modifies military, aircraft, and weapons systems for global, strike, vertical lift, and autonomous systems, as well as mobility, surveillance, and engagement. Boeing designed and manufactured the AH-64 Apache helicopter for the US Army under several contracts which included multi-million-dollar contracts in the early 2000s, and numerous subsequent contracts that were issued to Boeing to manufacture and remanufacture batches of AH– 64 Apaches.

11.3.    Ducommun is a global provider of manufacturing and engineering services in the aerospace and defense industry with engineered parts, including component parts. Boeing subcontracted with Ducommun to manufacture certain tail rotor, paddle/blades, including, upon information and belief, the paddle/blade that failed and led to the June 6, 2022 crash.

11.4.    Boeing and Ducommun had knowledge for many years before the June 6 crash of likely defects in the design and or manufacture of the tail rotor paddles utilized on the AH-64s and failed to adequately alert, warn, instruct the users, including the US Army of the defects and necessary remedial measures as well as inspection and maintenance techniques and safeguards.

12.      It is well known in the helicopter industry that the threat of corrosion of bolts and other hardware is a constant enemy of the Apache airframe. Investigations of the crash identified the primary cause of the accident as a crack or cracks in the Apache's Tail Rotor Blade that was not identified during maintenance and inspection of the Tail Rotor Blade required during the 25-hour/14-day inspection, Preventative Maintenance Services (PMS), policies and procedures. The blade ultimately failed as depicted here and landed in a farmer's cotton field approximately 750-1000 feet from the Apache crash site:



12.1     Upon information and belief, other similar failures of tail rotor blades had occurred on other AH-64s prior to the June 6 crash. Also, upon information and belief, early stage cracking that could lead to blade failures was discovered in other AH-64s at Novosel following the June 6 crash.

Finally, since the June 6 crash at least one other similar blade failure has occurred, leading to a crash and loss of another AH-64 Apache at Fort Bliss, Texas on or about November 27, 2023.

13.   Adrian suffered a severe spinal cord injury with paralysis. Adrian also suffered numerous other injuries, contusions, and lacerations. As a result of his injuries, he will never be capable of working as a helicopter instructor pilot again.

14.   As a direct and proximate result of his injuries, Adrian has been caused (1) to be rendered paralyzed and to suffer great physical pain and suffering, and he will also suffer great physical pain and suffering in the future, (2) to undergo serious and painful medical care, treatment, and expense, and he will also be caused to undergo such serious and painful medical care, treatment, and expenses in the future, (3) to lose wages and income, and to lose the capacity to generate income in the future, (4) to suffer great mental anguish, annoyance, and embarrassment, and to suffer more mental anguish, annoyance, and embarrassment in the future, (5) to be permanently injured and disfigured, and to remain in this state and dependent on other persons to some degree for the rest of his life, and (6) to suffer from a reduced quality of life, and to continue to suffer from a reduced quality of life for the rest of his life.

15.   As a direct and proximate result of the injuries suffered by her husband, Arioanna has lost the consortium, services, society, protection, care, assistance, companionship, and comfort of her husband, and she will lose her consortium, services, society, protection, care, assistance, companionship, and comfort for the rest of her life.

COUNT ONE
Negligence -- M1 Defendants and Fictitious Parties

16.   Plaintiffs adopt the paragraphs above as if they were fully set forth herein.

17.   The helicopter crash was caused by the negligence of M1, directly and by and through its employees, servants, and/or agents Lanceta, Brandon, Gallagher, and by the negligence of No.1,

No.2, No.3, No.4, No.5, No.6, No.7, No.8, No.9, No.10, and No.11, and their agents and employees, whose acts and omissions included the following:

      (a)     failing to adequately maintain, inspect, and repair the Apache helicopter;

      (b)     failing to provide a safe and suitable Apache helicopter for the Plaintiff;

      (c)     failing to take the Apache helicopter out of service;

      (d)     failing to adequately maintain, inspect and repair the tail rotor assembly on the Apache helicopter;

      (e)     failing to follow policies and procedures applicable to the scope, frequency and nature of maintenance and inspections;

      (f)     failing to establish adequate policies and procedures for maintaining and inspecting the Apache helicopter;

      (g)     failing to properly train personnel on maintenance and inspections of Apache helicopters, including the tail section assembly;

      (h)     failing to establish, communicate and train personnel in inspection and maintenance policies and procedures of sufficient scope, magnification, and frequency;

      (i)     failing to insure necessary and adequate record keeping and record retention with respect to the Apache helicopter involved;

      (j)     in other respects not now known to the Plaintiffs but which may become known prior to or at the time of trial;

      (k)     knowing that such acts or omissions could result in injury or death;

      (l)     failing to identify and correct unsafe practices with the tail rotor blade inspection;

      (m)     failing to identify the lack of adherence to proper inspection procedures as detailed in the AH-64 Improved Electronic Technical Manual (IETM); and/or

      (n)     failing in supervision to detect the improper inspection resulted in allowing the flaw in the tail rotor blade to go undetected and unaddressed.

18.     At the aforesaid time and place, the Defendant, M1, Lanceta, Brandon, Gallagher, and by No.1, No.2, No.3, No.4, No.5, No.6, No.7, No.8, No.9, No.10, and No.11, and their agents and

employees, had or undertook a duty to and provided maintenance services for its Apache helicopters, including, but not limited to, the tail rotor assembly, and, as such, had a duty to inspect, maintain and/or repair the Apache helicopter involved in the crash made the basis of this lawsuit and to properly conduct routine maintenance and inspection of the Tail Rotor Blade during the 25-hour/14-day inspection and follow all the required PMS services as outlined in TM1-1520-Longbow and Apache schedules. Defendants further had the obligation and duty to emphasize the importance of the 25-hour/14-day inspection and adhere to existing IETM procedures with regard to proper painting of the Tail Rotor Blade. Said Defendants negligently breached this duty by failing to adequately inspect, maintain and/or repair the Apache helicopter. Said Defendants' negligent failure to exercise such authority and fulfill such duty was a proximate cause of the Plaintiffs' injuries and damages. Further, Defendant, M1, and No.1, No.2, No.3, No.4, No.5, No.6, No.7, No.8, No.9, No.10, and No.11, and their agents and employees are vicariously liable to the Plaintiffs for the injuries and damages they suffered as a proximate result of the negligent conduct of their employees, servants, and/or agents.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs demand judgment against Defendants M1, Lanceta, Brandon, Gallagher, No.1, No.2, No.3, No.4, No.5, No.6, No.7, No.8, No.9, No.10, and No.11, in an amount of damages to be determined by the jury, together with interest from the date of injury and the costs of this proceeding.

COUNT TWO
Wantonness -- M1 Defendants and Fictitious Parties

19.     The Plaintiffs adopt the paragraphs above as if they were fully set forth herein.

20.     The helicopter crash was caused by the wantonness of the M1, directly and by and through its employees, servants, and/or agents Lanceta, Brandon, Gallagher, and by the negligence of No.1, No.2, No.3, No.4, No.5, No.6, No.7, No.8, No.9, No.10, and No.11, and their agents and employees, whose acts and omissions included the following:

(a)  failing to adequately maintain, inspect, and repair the Apache helicopter;

(b)  failing to provide a safe and suitable Apache helicopter for the Plaintiff;

(c)  failing to take the Apache helicopter out of service;

(d)  failing to adequately maintain, inspect and repair the tail rotor assembly on the Apache helicopter;

(e)  failing to follow policies and procedures applicable to the scope, frequency and nature of maintenance and inspections;

(f)  failing to establish adequate policies and procedures for maintaining and inspecting the Apache helicopter;

(g)  failing to properly train personnel on maintenance and inspections of Apache helicopters, including the tail section assembly;

(h)  failing to establish, communicate and train personnel in inspection and maintenance policies and procedures of sufficient scope, magnification, and frequency;

(i)  failing to insure necessary and adequate record keeping and record retention with respect to the Apache helicopter involved;

(j)  in other respects not now known to the Plaintiffs but which may become known prior to or at the time of trial;

(k)  knowing that such acts or omissions could result in injury or death

(l)  failing to identify and correct unsafe practices with the tail rotor blade inspection;

(m)  failing to identify the lack of adherence to proper inspection procedures as detailed in the AH-64 Improved Electronic Technical Manual (IETM); and/or

(n)  failing in supervision to detect the improper inspection resulted in allowing the flaw in the tail rotor blade to go undetected and unaddressed.

21.  At the aforesaid time and place, the Defendant, M1, Lanceta, Brandon, Gallagher, and by No.1, No.2, No.3, No.4, No.5, No.6, No.7, No.8, No.9, No.10, and No.11, and their agents and employees, had or undertook a duty to and provided maintenance services for its Apache helicopters, including, but not limited to, the tail rotor assembly, and, as such, had a duty to inspect, maintain

and/or repair the Apache helicopter involved in the crash made the basis of this lawsuit and to properly conduct routine maintenance and inspection of the Tail Rotor Blade during the 25-hour/14-day inspection and follow all the required PMS services as outlined in TM1-1520-Longbow and Apache schedules. Defendants further had the obligation and duty to emphasize the importance of the 25-hour/14-day inspection and adhere to existing IETM procedures with regards to proper painting of the Tail Rotor Blade. Said Defendants wantonly breached this duty by failing to adequately inspect, maintain and/or repair the Apache helicopter. Said Defendants' wanton failure to exercise such authority was a proximate cause of the Plaintiffs' injuries and damages. Further, Defendant, M1, and No.1, No.2, No.3, No.4, No.5, No.6, No.7, No.8, No.9, No.10, and No.11, and their agents and employees are vicariously liable to the Plaintiffs for the injuries and damages they suffered as a proximate result of the wanton conduct of their employees, servants, and/or agents.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs demand judgment, determined by a struck jury, against Defendants M1, Lanceta, Brandon, Gallagher, No.1, No.2, No.3, No.4, No.5, No.6, No.7, No.8, No.9, No.10, and No.11, and that it award damages in an amount which will adequately compensate them for the injuries and damages that they have suffered and will suffer due to the Defendants' reckless, willful, wanton and/or wrongful behavior, and in an amount which will adequately reflect the enormity of the Defendants' wrongful acts, and which will effectively prevent other similar wrongful acts. Further, Plaintiffs request that the Court enter judgment consistent with the verdict, and that it also award Plaintiffs interest from the date of judgment and the costs incurred by the court in managing this lawsuit.

## COUNT THREE
### AEMLD -- Boeing, Ducommun, and Fictitious Parties

22.     The Plaintiffs adopt the paragraphs above as if they were fully set forth herein.

23. Boeing and/or No.11 designed, manufactured, assembled, sold and/or distributed the Apache helicoptor and its component parts. Ducommun and/or No.12, upon information and beleif, was involved in the design, manufacture, assembly, selling and/or distributing of the tail rotor paddle, a component part of the Apache.

24. Boeing, Ducommun, No.11, and No.12 were regularly in the business of selling such products. There was no unforeseeable substantial change to these products from the time they left Boeing, Ducommun, No.11, and No.12 until it reached its ultimate users, including Adrian.

25. There were safer and practical alternative designs that Boeing, Ducommun, No.11, and No.12 could have used at the time the subject Apache and its tail rotor paddle were designed, manufactured, assembled, and sold.

26. The subject Apache and its tail rotor paddles were defective and unreasonably dangerous when used as intended in its design, in its manufacture, and in its lack of adequate warning. Among other things, the tail rotor paddle was designed and constructed with inferior metals or mixing of metals or other defects and insufficient to withstand the foreseeable and obvious forces and rigors of its intended use, making it prone to fail, crack, and break.

27. Boeing, Ducommun, No.11, and No.12 knew or should have known that the subject Apache and its tail rotor paddle could create danger when used as intended in its customary manner.

28. Boeing, Ducommun, No.11, and No.12 had no reason to believe that all foreseeable users would know of the dangerous condition of the subject Apache and its tail rotor paddles.

29. Boeing, Ducommun, No.11, and No.12 had reason to know that the particular purpose for which the subject Apache and its tail rotor paddles was purchased and used was to serve as a military aircraft.

30. Boeing, Ducommun, No.11, and No.12 knew that the purchasers and users of the subject Apache and its tail rotor paddle were relying on their skill or judgment to select or provide a suitable tail rotor paddles. During the incident made the basis of this lawsuit, the Apache and its tail rotor paddle did not perform as designed and intended.

31. The conduct of Boeing, Ducommun, No.11, and No.12 combined and concurred with the actions of the other Defendants, to proximately cause the Plaintiffs' injuries and damages. Further, Boeing, Ducommun, No.11, and No.12 are vicariously liable to the Plaintiffs for the injuries and damages they suffered as a proximate result of the conduct of their employees, servants, subcontractors, and/or agents.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs demand judgment, determined by a struck jury, against Defendants Boeing, Ducommun, No.11, and No.12, and that the Court award damages in an amount which will adequately compensate them for the injuries and damages that they have suffered and will suffer due to their defective products and in an amount which will adequately reflect the enormity of their wrongful acts, and which will effectively prevent other similar wrongful acts. Further, Plaintiffs request that the Court enter judgment consistent with the verdict, and that it also award Plaintiffs interest from the date of judgment and the costs incurred by the court in managing this lawsuit.

COUNT FOUR<br>Negligence -- Boeing, Ducommun, and Fictitious Parties

32. The Plaintiffs adopt the paragraphs above as if they were fully set forth herein.

33. Boeing, Ducommun, No.11, and No.12 owed a duty to exercise reasonable care in the design, manufacture, instruction, warning, instructions for maintenance, replacement cycles, assembly, installation, distribution and/or sale of the Apache and its tail rotor paddles so that they would be reasonably safe for its normal use.

34.    Boeing, Ducommun, No.11, and No.12 negligently breached those duties by utilizing a defective manufacturing process. They also defectively designed the Apache and its tail rotor paddle. They also negligently warned the users about the defects, needed maintenance, and replacement, as stated above. They also engaged in inadequate product quility review and controls.

35.    The negligent conduct of Boeing, Ducommun, No.11, and No.12 combined and concurred with the actions of the other Defendants, to proximately cause the Plaintiffs' injuries and damages. Further, Boeing, Ducommun, No.11, and No.12 are vicariously liable to the Plaintiffs for the injuries and damages they suffered as a proximate result of the conduct of their employees, servants, and/or agents.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs demand judgment, determined by a struck jury, against Defendants Boeing, Ducommun, No.11, and No.12, and that the Court award damages in an amount which will adequately compensate them for the injuries and damages that they have suffered and will suffer due to their negligence. Further, Plaintiffs request that the Court enter judgment consistent with the verdict, and that it also award Plaintiffs interest from the date of judgment and the costs incurred by the court in managing this lawsuit.

## COUNT FIVE

### Wantonness -- -- Boeing, Ducommun, and Fictitious Parties

36.    The Plaintiffs adopt the paragraphs above as if they were fully set forth herein.

37.    Defendants Boeing, Ducommun, No.11, and No.12 wantonly breached their duties by wantonly doing the acts stated above.

38.    The wanton conduct of Boeing, Ducommun, No.11, and No.12 combined and concurred with the actions of the other Defendants, to proximately cause the Plaintiffs' injuries and damages. Further, Boeing, Ducommun, No.11, and No.12 are vicariously liable to the Plaintiffs for

the injuries and damages they suffered as a proximate result of the conduct of their employees, servants, and/or agents.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs demand judgment, determined by a struck jury, against Defendants Boeing, Ducommun, No.11, and No.12, and that the Court award damages in an amount which will adequately compensate them for the injuries and damages that they have suffered and will suffer due to their wantonness and in an amount which will adequately reflect the enormity of their wrongful acts, and which will effectively prevent other similar wrongful acts. Further, Plaintiffs request that the Court enter judgment consistent with the verdict, and that it also award Plaintiffs interest from the date of judgment and the costs incurred by the court in managing this lawsuit.

## COUNT SIX

### Breach of Implied Warranty -- -- Boeing, Ducommun, and Fictitious Parties

39.    The Plaintiffs adopt the paragraphs above as if they were fully set forth herein.

40.    Defendants Boeing, Ducommun, No.11, and No.12 impliedly warranted that the Apache and its tail rotor paddles were reasonably fit and suitable for the purposes for which they were intended to be used, were free of defects, and were of merchantable quality. They breached said warranties for the reasons set-forth above and because the Apache and its tail rotor paddles were not fit or suitable for the purposes for which they were intended to be used.

41.    The breach of warranty by Defendants Boeing, Ducommun, No.11, and No.12 was the direct and proximate cause of the Plaintiffs' injuries and damages. These injuries and damages would have been prevented if Defendants Boeing, Ducommun, No.11, and No.12 had not breached their warranties.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against Defendants Boeing, Ducommun, No.11, and No.12. Plaintiffs request an award of compensatory damages in an amount determined by a jury. Plaintiffs also request interest, costs, and all other relief which may be just and proper.

<u>JURY DEMAND</u>

42.    Plaintiffs hereby demand a struck jury for the trial in this cause.

Respectfully submitted by
the Attorneys for Adrian and Arioanna Barajas,

*/s/ David Marsh*
David Marsh (ASB-0717-S78D)
Richard Riley
J.D. Marsh
MARSH | RICKARD | BRYAN
2222 Arlington Avenue South; Suite 210
Birmingham, Alabama 35205
(205) 879 1981 | dmarsh@mrblaw.com
rriley@mrblaw.com | jdmarsh@mrblaw.com

Dale Marsh
MARSH & COTTER L.L.P.
203 East Lee Street
Enterprise, Alabama 36331
(334) 347-2626
mdm@enterpriselawyers.com

Chris Searcy | Mariano Garcia | Cameron Kennedy
SEARCY, DENNEY, SCAROLA, BARNHART & SHIPLEY P.A.
517 North Calhoun Street
Tallahassee, Florida 32301
(850) 224-7600 | cds@searcylaw.com
mxg@searcylaw.com | cmk@searcylaw.com

Request for Service

Plaintiff requests the Clerk immediately issue summonses for the following named defendants to be served by certified mail at the following addresses, and to mail out said service packages:

THE BOEING COMPANY
c/o Corporation Service Company Inc., its registered agent
641 South Lawrence Street
Montgomery, Alabama 36104

BOEING AEROSPACE OPERATIONS INC.
c/o Corporation Service Company Inc., its registered agent
641 South Lawrence Street
Montgomery, Alabama 36104

DUCOMMUN INCORPORATED
c/o URS Agents L.L.C., its registered agent
614 North Dupont Highway; Suite 210
Dover, Delaware 19901

DUCOMMUN AEROSTRUCTURES INC.
c/o URS Agents L.L.C., its registered agent
614 North Dupont Highway; Suite 210
Dover, Delaware 19901

*/s/ David Marsh*
David Marsh

Certificate of Filing and Service

On March 4, 2024, I electronically filed this with the CM/ECF system, which will electronically serve the following counsel of record:

Clinton Timothy Speegle Esq.(cspeegle@lightfootlaw.com)
John Banks Sewell III Esq. (bsewell@lightfootlaw.com)
Wesley Smithart Esq. (wsmithart@lightfootlaw.com)

*/s/ David Marsh*
David Marsh